## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| PENNSYLVANIA NATIONAL MUTUAL : <br> CASUTALTY INSURANCE COMPANY : <br> : <br> : <br> v. : <br> : <br> : <br> STEWART J. LEVITAS, ET AL. : <br> : | Civil No. CCB-16-2060 |

## **MEMORANDUM**

Plaintiff Pennsylvania National Mutual Casualty Insurance Company ("Penn National") brought this action against Stewart J. Levitas ("Levitas"), State Real Estate, Inc. ("SRE," and collectively with "Levitas," the "Levitas Parties"), Tajah Jeffers, and Tynae Jeffers, requesting a declaratory judgment that Penn National's responsibility for the final judgments awarded to the Jeffers only extends to its pro-rata time on the risk.[1]

Pending before the court is the Jeffers' motion to dismiss or stay. (Defs.' Mot. Dismiss or Stay, ECF No. 18). Penn National filed a response in opposition, (Pl.'s Resp. Opp'n to Mot. Dismiss or Stay, ECF No. 22), to which the Jeffers replied. (Defs.' Reply to Resp. to Mot., ECF No. 25). The motions are fully briefed, and no oral argument is necessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated below, the motion to stay will be granted and the case stayed pending resolution of Case No. 24-C-16-003198 in the Circuit Court for Baltimore City.

## **BACKGROUND**

This case arises out of lead paint exposure at 2116 Hollins Street in Baltimore, Maryland (the "Property"). (Compl. ¶¶ 11, 14, ECF No. 1). During the time period in question, Levitas

---

[1] The Levitas Parties failed to file timely answers and, as a result, the court entered their defaults on August 16, 2016. (Entry of Default as to Stewart J. Levitas, State Real Estate, Inc., ECF No. 19).

1

owned and SRE managed the Property. (*Id.* ¶ 13). The Levitas Parties contracted with Penn National to insure the Property, among others, under contract 2300007180 ("Insurance Contract"), with coverage beginning November 27, 1991 and ending August 1, 1997. (*Id.* ¶ 9). The Insurance Contract included commercial general liability coverage. (*Id.* ¶ 12).

Plaintiff Tajah Jeffers resided at the Property from March 17, 1994, until March 26, 1998. (*Id*. ¶ 21). Tajah exhibited elevated blood-lead levels from September 24, 1993, up to her last elevated blood-level test on June 2, 1998. Plaintiff Tynae Jeffers resided at the Property from the date of her birth on November 8, 1996, until March 26, 1998. (*Id.* ¶ 22). Tynae exhibited elevated blood-lead levels from May 14, 1997, up to her last elevated blood-lead level test on November 25, 1998.

On August 23, 2013, the Jeffers plaintiffs filed a lawsuit against the Levitas Parties and Penn National in the Circuit Court for Baltimore City, Case No. 24-C-12-005059 (the "Underlying Case"), requesting damages as a result of their exposure to lead paint while residing at the Property. (Compl., Ex. A, *Tajah Jeffers, et al. v. Stewart Levitas et al.* Compl., ECF No. 1-1). The Levitas Parties requested defense and indemnification from Penn National under the Insurance Contract, which Penn National agreed to provide subject to a reservation of rights. (Compl. ¶¶ 16–19). At the conclusion of the five-day trial, the jury returned a verdict in favor of Tajah and Tynae Jeffers and final judgment was entered in the amount of $2,413,134.33 and $1,650,619.33, respectively. (Compl. Ex. B, Notice of R. J., ECF No. 1-2; Compl. Ex. C, Cir. Ct. of Baltimore City Or., ECF No. 1-3).

After an unsuccessful appeal, (Defs.' Mot. Dismiss or Stay, Ex. C, Ct. App. Md. Or., ECF No. 18-4), the Levitas Parties have yet to satisfy the judgment in the Underlying Case.

(Defs.' Mot. Dismiss or Stay 4, ECF No. 18). The Jeffers sent a letter to Penn National on May 5, 2016, demanding satisfaction of the judgment. (Defs.' Mot. Dismiss or Stay, Ex. D, Demand Letter, ECF No. 18-5). On May 19, 2016, the Jeffers filed an action against Penn National in the Circuit Court for Baltimore City, Case No. 24-C-16-003198, seeking the full amount of the judgment entered in the Underlying Case. (Defs.' Mot. Dismiss or Stay 4). Penn National followed suit by filing this declaratory judgment action on June 13, 2016.

**ANALYSIS**

This court has diversity jurisdiction over the case, 28 U.S.C. § 1332(a), because the parties are diverse and the amount in controversy exceeds $75,000. The suit is brought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a), as the sole relief sought in the complaint is the declaration of the parties' rights under the insurance contract. The central question presented by defendants in their motions is whether the court should exercise its discretion to issue a declaratory judgment.

The Declaratory Judgment Act is "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (quoting *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952)). Even where a declaratory judgment action "otherwise satisfies subject matter jurisdictional prerequisites," the district court "possess[es] discretion" in determining whether to entertain the suit. *Id*. at 282; *see also Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494 (1942). The Fourth Circuit has long recognized "the discretion afforded to district courts in determining whether to render declaratory relief." *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 421–22 (4th Cir. 1998). This discretion is especially "crucial when . . . a parallel or related proceeding is

pending in state court." *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 297 (4th Cir. 2005).

In determining whether to exercise jurisdiction in a declaratory judgment action, the district court must "weigh considerations of federalism, efficiency, and comity." *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493 (4th Cir. 1998) (quoting *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 376 (4th Cir. 1994)); *see also New Wellington Fin. Corp.*, 416 F.3d at 297. The Fourth Circuit has articulated four factors for district courts to consider when determining whether to abstain from exercising jurisdiction over a declaratory judgment action during the pendency of a parallel state proceeding:

> (1) [W]hether the state has a strong interest in having the issues decided in its courts; (2) whether state courts could resolve the issues more efficiently than the federal courts; (3) whether the presence of "overlapping issues of fact or law" might create unnecessary "entanglement" between the state and federal courts; and (4) whether the federal action is mere "procedural fencing," in the sense that the action is merely the product of forum-shopping.

*Kapiloff*, 155 F.3d at 493–94 (quoting *Nautilus Ins.*, 15 F.3d at 377).

As to the first *Kapiloff* factor, the strength of the state interest in having the issues decided in its courts is not compelling enough to weigh against federal jurisdiction. In order for the state to have a strong interest in having the issues decided in its courts, the questions of state law raised in the federal action must be "difficult" or "problematic." *Nautilus Ins.*, 15 F.3d at 378. It is not enough that the issues of law raised in the federal action are governed entirely by substantive state law. *Id.* Where the federal case involves "the routine application of settled principles of law to particular disputed facts," the state's interest is not "sufficiently compelling to weigh against the exercise of federal jurisdiction." *Id.*; *see also Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 258 (4th Cir. 1996) ("[A]lthough only state law is at issue, the relevant state

law is not problematic or difficult to apply, which weakens somewhat the state's interest in having these issues decided in state court."). While the provisions of the insurance contract will be interpreted using the substantive law of the State of Maryland, the issue is unlikely to turn on a novel question of Maryland law.[2] As a result, this factor does not favor either side.

The second *Kapiloff* factor, focusing on concerns of efficiency, also does not weigh heavily on either side of abstention. The primary focus in evaluating efficiency concerns is "whether the questions in controversy between the parties to the federal suit . . . can be better settled in the proceeding pending in the state court." *Brillhart*, 316 U.S. at 495. This requires consideration as to "the scope of the pending state court proceeding," including whether all parties' claims can be successfully adjudicated in state court and whether all necessary parties have been joined in the state action. *Id.*; *see also Poston*, 88 F.3d at 258 (affirming the district court's decision to abstain because the state court action "contain[ed] a defendant and a number of issues not present in the federal action"). As the parties in the two cases are identical, and the lawsuits at a similar point in the procedural process, efficiency concerns do not weigh heavily into the balance of *Kapiloff* factors.

There is a legitimate concern of entanglement, the third *Kapiloff* factor, weighing in favor of abstention. Federal courts should decline "to entertain a declaratory action that could result in entanglement between the two court systems." *Mitcheson v. Harris*, 955 F.2d 235, 239 (4th Cir. 1992). Concerns about entanglement primarily turn on the preclusive effect the declaratory judgment action will have on the state action. *Id.* at 239–40. Where both actions "raise[] the

---

[2] The Jeffers argue that, because the Maryland Court of Appeals previously granted certiorari in a case examining allocation of surety liability, *see Baltimore v. Utica Mut.*, 371 Md. 613, 810 A.2d 961 (2002) (granting petition for certiorari), Maryland state law is not settled on this particular issue. (Defs.' Reply to Resp. to Mot. 5). The appeal was withdrawn before the Maryland Court of Appeals could rule on it, *see Baltimore v. Utica Mut.*, 374 Md. 81, 821 A.2d 369 (2003). As no further developments have occurred in Maryland's treatment of surety liability allocation in the intervening years, it seems unlikely that the state court action will turn on a novel question of law.

same core issues of law and fact," and are both "aimed at determining the rights of parties under [an] insurance policy," there is a genuine possibility of entanglement between state and federal courts. *Kapiloff*, 155 F.3d at 494.

Plaintiff argues that, because the factual issues were resolved by the jury in the Underlying Case, there is no possibility of entanglement. The Jeffers's state court request for judgment against Penn National and Penn National's federal declaratory action, however, turn on the same question of law: what allocation of the judgment in the Underlying Case Penn National is responsible for satisfying. Both actions are aimed at determining the rights and responsibilities of the parties under the Insurance Contract. Accordingly, there is a genuine possibility of entanglement that weighs in favor of federal abstention.

Finally, the fourth *Kapiloff* factor asks whether the federal action is mere procedural fencing, which Penn National's actions suggest. Procedural fencing occurs when "a party has raced to federal court in an effort to get certain issues that are already pending before the state courts resolved first in a more favorable forum." *Great American Ins. Co. v. Gross*, 468 F.3d 199, 212 (4th Cir. 2006). Procedural fencing also can occur where the federal filing precedes the state filing: the Fourth Circuit has counseled against placing "undue significance on the race to the courthouse door" in parallel proceedings in state court, particularly when the federal plaintiff had constructive notice of the defendant's intent to sue. *Poston*, 88 F.3d at 258.

The Jeffers's state action, filed on May 19, 2016, preceded Penn National's June 13, 2016, filing of the federal court action.[3] Additionally, the May 5, 2016, demand letter provided

---

[3] The plaintiff points to an ongoing dispute in the state court case over alleged improper service to bolster their argument for lack of procedural fencing, contending that they were unaware of the state court action because of service defects. (Pl.'s Resp. Opp'n to Mot. Dismiss or Stay 17, n. 1). This issue appears to have been resolved through a joint stipulation, (Pl.'s Resp. Opp'n to Mot. Dismiss or Stay, Ex. C, J. Stip. and Consent Mot., ECF No.

Penn National constructive notice of the Jeffers's intent to sue. While the evidence of procedural fencing is not strong, it weights slightly in favor of federal abstention.

## CONCLUSION

Given the genuine possibility of entanglement and the suggestion of procedural fencing, the balance of *Kapiloff* factors weighs in favor of federal abstention. The Supreme Court has advised that a stay is a better course of action than a dismissal because "it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy." *Wilton*, 515 U.S. at 288 n. 2. Accordingly, the motion to stay will be granted and the case will be stayed pending resolution of the state court litigation.

A separate order follows.

 __January 3, 2017_____             _____/S/_____
Date                                 Catherine C. Blake
                                     United States District Judge

---

22-3), and an amended complaint, (Defs.' Reply to Resp. to Mot., Ex. B, Amended Compl., ECF No. 25-2). Service defects aside, Penn National still had constructive notice of the Jeffers's intent to sue via the demand letter, which it acknowledges receiving prior to filing the federal action. (Pl.'s Resp. Opp'n to Mot. Dismiss or Stay 17, n. 1).